UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-40127FDS

EMPLOYERS INSURANCE COMPANY   )
OF WAUSAU   )
     Plaintiff,   )
v.   )
  )
IACCARINO & SON, INC., R.W. GRANGER   )
& SONS, INC., and KMD MECHANICAL   )
CORPORATION   )
     Defendants.   )

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY
### (ORAL ARGUMENT REQUESTED)

### INTRODUCTION

Plaintiff Employers Insurance Company of Wausau ("Wausau") opposes Defendant Iaccarino & Son, Inc.'s ("Iaccarino") Motion to Stay for three reasons. First, the only party engaging in forum shopping is Iaccarino by belatedly attempting to drag Wausau into the state court proceedings. This federal coverage action was first filed; accordingly, the Court should hear it. Second, there is no identity of the parties and issues between this action and the Worcester Superior Court actions; therefore, the proceedings are not truly parallel. Since the proceedings are not parallel, this Court should not stay this coverage action. Third, the coverage issues in this action are narrow and focused. They are not intertwined with the liability issues in the underlying Worcester Superior Court actions. Based upon Affidavits submitted by R.W. Granger & Sons, Inc.'s ("Granger") President in other coverage litigation, it appears clear that the Wausau CGL policy at issue does not provide coverage for Iaccarino in the Worcester Superior Court actions. The damages Granger claims it is entitled to recover as a result of the air handler unit malfunction on December 3, 2003 that caused the temperature in the Town of Shrewsbury High School auditorium to spike to

135 degrees F are solely for damage to Iaccarino's product itself (i.e., the millwork). CGL policies do not provide coverage for damages to an insured's product or work itself. Accordingly, after some focused discovery, Wausau intends to move for summary judgment. Therefore, no concerns of judicial economy or of duplicative litigation are implicated here. The coverage issues can and should be expeditiously resolved in this action.

### STATEMENT OF THE PERTINENT FACTS[1]

1. Wausau commenced this coverage action by filing its Complaint on July 6, 2004. By way of its Complaint, Wausau seeks a declaration that it has no duty to defend or indemnify Iaccarino under a Commercial General Liability Policy having Policy No. TBC-Z91-425443-022 for the policy period from January 28, 2002 to January 28, 2003 (the "Wausau CGL Policy") in two underlying civil actions pending in the Worcester Superior Court: (1) *R.W. Granger & Sons, Inc. v. Iaccarino & Sons, Inc., et al.*, Worcester Superior Court Civil Action No. WOCV2003-01021 (the "Backcharges Action"), and (2) *R.W. Granger & Sons, Inc. v. KMD Mechanical Corp., et al.*, Worcester Superior Court Civil Action No. WOCV2003-01659 (the "Defective HVAC System Action").[2]  Wausau's declaratory judgment action is brought pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201, *et seq.*  Jurisdiction in this Court is proper under 28 U.S.C. § 1332 as the parties are diverse and the amount in controversy exceeds $75,000.

2. On May 16, 2000, Granger entered into a contract with the Town of Shrewsbury to construct the Shrewsbury High School (the "School Project"). Exhibit 1, Affidavit of Ernest E.

---

[1]The referenced Exhibits are attached to the Affidavit of John F. Brosnan in Support of Plaintiff's Opposition to Defendant's Motion to Stay.

[2]The Worcester Superior Court has consolidated the Backcharges Action and the Defective Construction Action.

O'Brien from the civil action encaptioned *Valley Forge Insurance Company v. R.W. Granger & Sons, Inc.*, Norfolk Superior Court Civil Action No. NOCV2003-01721 at ¶ 2 (the "Valley Forge Action").[3]

3.  Iaccarino was the millwork subcontractor on the School Project.  *See* Exhibit 1, O'Brien Affidavit at ¶ 7; Exhibit 2, Supplemental Affidavit of Ernest E. O'Brien from the Valley Forge Action at ¶¶ 3-4.[4]

4.  In his Supplemental Affidavit in the Valley Forge Action, Granger's President, Ernest O'Brien, stated:

> [O]n December 3, 2002, a controller that adjusted the heating output for an air handler unit malfunctioned, causing the temperature in the School's Auditorium to rise to 135 degrees F.  The heat damaged the plastic laminate panels in the Auditorium, causing some to delaminate, and causing some of the plastic laminate to fall off of the flat panels (called "clouds") which are suspended from the ceiling.

Exhibit 2, Supplemental O'Brien Affidavit at ¶ 2.  Iaccarino constructed the plastic laminate panels in the School's Auditorium.  Exhibit 2, Supplemental O'Brien Affidavit at ¶ 4.  The panels were installed by Granger.  Supplemental O'Brien Affidavit at ¶ 2.

5.  In his Affidavit, Granger's President, Ernest O'Brien, described the alleged damages to the Auditorium resulting from the controller malfunction as follows:

> 9.  Granger has engaged subcontractors to remedy this condition, at substantial cost.  As summarized on Exhibit 3 to this affidavit, Granger has contracted with Millwork One for the construction and

---

[3]Mr. O'Brien is Granger's President.  Mr. O'Brien's Affidavit in the Valley Forge Action shall be referred to as the "O'Brien Affidavit."  On May 10, 2004, the Norfolk Superior Court (Brady, J.) issued its Memorandum of Decision on Cross Motions for Summary Judgment in which it ruled that the CGL policy Valley Forge issued to Granger did not provide coverage for Granger's claims for reimbursement for costs associated with repairing the Shrewsbury High School auditorium.

[4]Mr. O'Brien's Supplemental Affidavit in the Valley Forge Action shall be referred to as the "Supplemental O'Brien Affidavit."

3

installation of new panels at a cost of $557,513. Granger has paid $490,095 of this amount to date. In addition, Granger has paid $800 for cleaning costs (to Sunshine Cleaning); $192 for equipment rental (to NES Rentals); and $942 for repair to the sprinkler system (to Fire Suppression Systems of New England). Granger has also incurred $8,756 of cost for its own work in repairing the property damage. Granger expects to pay an additional $800 for repair to the sprinkler system, to pay $2,063 for electrical work (to Coghlin Electrical), to pay $1,600 for repair and reinstallation of handrails that were attached to some of the panels (to Ralph's Blacksmith) and to incur $1,443 in cost for additional work by Granger in repairing the property damage. These amounts total $574,109.

10. Granger estimates its overhead cost at $57,411 (10% of the above amount), bringing the total claim to $631,520.

Exhibit 1, O'Brien Affidavit at ¶¶ 9-10.

6. The two underlying Worcester Superior Court actions concern the School Project.

7. On or about May 23, 2003, Granger commenced the Backcharges Action. On or about July 30, 2003, Granger filed its First Amended Complaint in the Backcharges Action. Exhibit 3, First Amended Complaint. In its First Amended Complaint, Granger alleges that the Town of Shrewsbury assessed backcharges of $183,054.27 against Granger for project delays resulting from the School Project. Exhibit 3, First Amended Complaint at ¶ 17. Although Granger disputes the Town's allegations regarding the assessment of backcharges, Granger sued various subcontractors on the School Project, including Iaccarino, claiming that if the Town's allegations were true then those subcontractors breached their subcontracts. Exhibit 3, First Amended Complaint. The only claim Granger asserted against Iaccarino in the Backcharges Action is for breach of contract. Exhibit 3, First Amended Complaint at ¶¶ 62-64. Wausau is not a presently a party to the

4

Backcharges Action.[5]

8.  On or about August 22, 2003, Granger commenced the Defective HVAC System Action. Exhibit 5, Complaint.  In its Complaint in the Defective HVAC System Action, Granger alleges that the HVAC system installed by KMD Mechanical Corporation ("KMD") on the School Project did not function properly and that on or about December 4, 2002 the temperature in the School's auditorium rose to approximately 140 degrees Fahrenheit.  Exhibit 5, Complaint at ¶ 14.  Granger further alleges that this temperature spike resulted in damage to Iaccarino's work product itself – the millwork.  Exhibit 5, Complaint at  ¶ 14.  In its Complaint in the Defective HVAC System Action, Granger asserts a claim for negligence and for breach of contract against Iaccarino.  Exhibit 5, Complaint at ¶¶ 22-28.  In its Complaint in the Defective HVAC System Action, Granger makes the following allegation:

> 14.  As a result of Iaccarino's negligence and breach of subcontract, the millwork suffered damage on or about December 4, 2002, in that Iaccarino, among other things, provided and installed insufficient glue to withstand the conditions in the auditorium.

Exhibit 5, Complaint at ¶ 14.  Wausau is not presently a party to the Defective HVAC Action.[6]

9.  The insuring agreement in the Wausau CGL Policy provides, in pertinent part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will

---

[5]On December 10, 2004, Iaccarino, simultaneously with the filing of its Motion to Stay in this action, served its motion for leave to file a third-party complaint in the Worcester Superior Court actions.  Wausau has opposed Iaccarino's motion for leave to file a third-party complaint in the Worcester Superior Court actions on the grounds that this federal action is the first filed action, that Iaccarino's proposed third-party claims against Wausau are, in reality, compulsory counterclaims that should have been brought in this federal action, and that Wausau will be prejudiced if it is forced to litigate the coverage issues in state court rather than this Court.  A copy of Wausau's opposition is attached as Exhibit 4.

[6]See footnote 5 above.

have no duty to defend the insured against any "suit" seeking damages for . . . "property damage" to which this insurance does not apply.

Exhibit 6, Wausau CGL Policy.

10. The Wausau CGL policy defines "property damage" as:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Exhibit 6, Wausau CGL Policy.

11. The Wausau CGL policy defines "occurrence" as: "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Exhibit 6, Wausau CGL Policy.

12. Exclusion k. of the Wausau CGL policy excludes coverage for "'[p]roperty damage' to 'your product' arising out of it, or any part of it." The Wausau CGL policy defines "[y]our product" as:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

6

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product," and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

Exhibit 6, Wausau CGL Policy.

13. Exclusion l. of the Wausau CGL policy excludes coverage for:

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Exhibit 6, Wausau CGL Policy. The Wausau CGL Policy defines "[y]our work" as:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work," and

b. The providing of or failure to provide warnings or instructions.

Exhibit 6, Wausau CGL Policy.

14. On or about October 30, 2003, Wausau advised Iaccarino that it would defend the Defective HVAC System Action under a reservation of rights. Wausau is presently providing Iaccarino with a defense in the Defective HVAC System Action under a reservation of rights.

15. On or about March 22, 2004, Wausau denied coverage for Iaccarino for the Backcharges Action.

7

16. Wausau seeks a declaration by this Court that it has no obligation to defend or indemnify Iaccarino in either the Backcharges Action or Defective HVAC System Action.

## ARGUMENT

**I. This Action Is the First Filed Action; Accordingly, This Court May Properly Hear It.**

Although Iaccarino claims Wausau is forum-shopping, the only party engaged in forum-shopping is Iaccarino by trying to drag Wausau into the state court proceedings.[7] When Wausau commenced its action in July 2004, it was (and presently is) not a party to the Worcester Superior Court proceedings and the coverage issues in this action were (and presently are) not part of those state court proceedings.

The plaintiff's selection of a forum in a first filed action is generally preferred. *Seidman v. Central Bancorp, Inc.*, 15 Mass. L. Rptr. 642, 2003 WL 369678 (Mass. Super. Ct., Feb. 3, 2003) (Van Gestel, J.)*, citing Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987). Furthermore, "[t]he general rule is that where there is concurrent jurisdiction in two or more court units, whether such court units be in the same or in different States, the court whose jurisdiction first attaches over the proceeding, may hear and dispose of it to the exclusion of the other courts." Nolan and Henry, Civil Practice, 9 M.P.S. § 3.13 at 97 (2004). Moreover, the third-party claims Iaccarino now seeks to assert against Wausau in the Backcharges and Defective HVAC Actions are

---

[7]As noted in footnote 5, simultaneous with the filing of its Motion to Stay on December 10, 2004, Iaccarino served its motion for leave to file a third-party complaint in the state court proceedings as part of its effort to shift the forum to the state court. Wausau has opposed Iaccarino's motion for leave to file a third-party complaint in the Worcester Superior Court actions on the grounds that this federal action is the first filed action, that Iaccarino's proposed third-party claims against Wausau are, in reality, compulsory counterclaims that should have been brought in this federal action, and that Wausau will be prejudiced if it is forced to litigate the coverage issues in state court rather than this Court.

compulsory counterclaims that should have been brought in this action.  Fed. R. Civ. P. 13(a).[8]

Failure to raise a compulsory counterclaim typically bars assertion of the claim in a subsequent

action.  *National Lumber Co. v. Canton Inst. for Savings*, 56 Mass. App. Ct. 186, 187 (2002).  *See*

*Carteret Savings & Loan Ass'n v. Jackson*, 812 F.2d 36 (1st Cir. 1987).

Here, Wausau's coverage action was first filed.  There is "no authority for the proposition that

an insurer is barred from invoking diversity jurisdiction to bring a declaratory judgment action

against an insured on an issue of coverage."  *Aetna Cas. and Sur. Co. v. Merritt*, 974 F.2d 1196,

1199 (6th Cir. 1992).  Accordingly, this Court should hear Wausau's declaratory judgment action.

## II.    There Is No Identity of the Parties and Issues Between This Coverage Action and the Worcester Superior Court Actions; Accordingly, This Coverage Action Should Not Be Stayed.

Wausau commenced this declaratory judgment action on July 6, 2004.  Wausau seeks a

declaration that it has no duty to defend or indemnify Iaccarino under the Wausau CGL Policy in

the Backcharges Action or the Defective HVAC System Action.  The Declaratory Judgment Act

provides, in pertinent part:

> . . . [A]ny court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

---

[8]Fed. R. Civ. P. 13(a) provides, in pertinent part:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. . . .

In moving for a stay of this action, Iaccarino relies principally upon *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).[9]   However, *Wilton* does not apply here.

In *Wilton*, the Supreme Court held that the district court did not abuse its discretion in staying the federal action where **parallel** state court proceedings encompassed the **same** coverage issues raised in the federal action.   *Id.* at 290.   Here, unlike in *Wilton*, Wausau is not a party to the underlying Worcester Superior Court actions.[10]   Furthermore, the issues in the underlying Worcester Superior Court actions are entirely different from the narrow coverage issues in this action.   The Backcharges Action concerns Granger's claims against various subcontractors, including Iaccarino, for breach of contract based upon the Town of Shrewsbury's assessment of backcharges against Granger and does not concern the coverage issues involved in this action.   Similarly, the Defective HVAC System Action concerns Granger's claims against KMD and Iaccarino resulting from the alleged malfunctioning of the air handler controller on December 3, 2002.   The Defective HVAC Action does not address the coverage issues involved in this action.   Therefore, there are no "**parallel** state proceedings" since there is no identity of the parties or issues between this action and the Backcharges Action and Defective HVAC System Action.   *See Agora Syndicate, Inc. v. Robinson Janitorial Specialists, Inc.,* 149 F.3d 371, 373-374 (5th Cir. 1998); *Merritt*, 974 F.2d at 1199; *Peerless Ins. Co. v. Disla*, 999 F. Supp. 261, 262-263 (D. Conn. 1998).[11]

---

[9]In *Wilton*, the Supreme Court reaffirmed its holding in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942) that the federal district courts possess discretion to determine whether and when to entertain an action under the federal Declaratory Judgment Act.

[10]As noted in footnotes 5 and 7, on December 10, 2004, Iaccarino served its motion for leave to file a third-party complaint against Wausau in the Worcester Superior Court actions.  Wausau has opposed that motion.

[11]The cases on which Iaccarino relies are readily distinguishable since the state proceedings involved in those cases involved the same parties and issues.  *See Wilton*, 515 U.S. at 279-280 (insurer filed federal declaratory judgment action against its insureds seeking declaration that its policies did not provide coverage for underlying state court judgment; insureds then filed state court action against insurer seeking coverage for underlying state court

In *Merritt*, the Sixth Circuit rejected the defendants' argument that the district court abused its discretion in entertaining Aetna's declaratory judgment action on the issue of coverage. As the *Merritt* court reasoned:

> Here there was no state action pending when Aetna filed its declaratory relief action. **We know of no authority for the proposition that an insurer is barred from invoking diversity jurisdiction to bring a declaratory judgment action against an insured on an issue of coverage.** The district court below properly heard the case.

*Merritt*, 974 F.2d at 1199 (emphasis added). Similarly in *Disla*, the court refused to stay a coverage action brought by Peerless Insurance Company where there was no parallel coverage proceeding in state court. As the *Disla* court concluded:

> **Unlike the facts in *Wilton*, in this case the insurer is not a party to the state court proceedings. The state suit involves the liability of multiple parties for the personal injuries sustained by Mathew Kosbob; it does not involve the insurance coverage issue presented in the declaratory judgment action.** This is not a situation where the insurance coverage issue would be better decided in that proceeding. Therefore, we decline to exercise our discretion to stay or dismiss these proceedings.

*Disla*, 999 F. Supp. at 263 (emphasis added). Likewise in *Agora Syndicate*, the Fifth Circuit held that the district court abused its discretion in declining jurisdiction over a coverage action brought

---

judgment); *Brillhart*, 316 U.S. at 492-493 (insurer anticipating a coercive suit filed federal declaratory judgment action seeking declaration of nonliability under a reinsurance agreement; thereafter, insurer was made a party to state court garnishment proceedings); *El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488 (1st Cir. 1992) (newspaper publisher filed federal declaratory judgment action against Puerto Rico's Governor seeking declaration that an executive order was unconstitutional; three days later, newspaper publisher filed substantially similar complaint against Governor in Puerto Rico Superior Court -- the paramount difference between two actions was that newspaper publisher sought relief under federal law in the federal action and under local law in the Puerto Rico action); *Atlas Copco Constr. Tools, Inc. v. Allied Constr. Products, LLC*, 307 F. Supp.2d 228 (D. Mass. 2004) (plaintiff filed federal declaratory judgment action against defendant regarding interpretation of a confidentiality agreement; less than two hours later, defendant filed state court action against plaintiff alleging it had violated the confidentiality agreement); *Chedester v. Town of Whately*, 279 F. Supp.2d 53 (D. Mass. 2003) (plaintiff amateur radio operator "simultaneously" filed federal declaratory judgment action and state court action; court noted that: "[t]he federal and state lawsuits are virtually identical" and the only difference was that the federal action was brought under the federal Declaratory Judgment Act; whereas, the state action was brought under the Massachusetts declaratory judgment statute).

by the insurer in deference to the underlying liability case pending in state court. *Agora Syndicate*, 149 F.3d at 372. As the *Agora Syndicate* court ruled:

> **First, this is not what the Supreme Court meant in Wilton by use of the term "parallel state proceedings," for there is no identity of parties or issues in the state and federal court suits.** . . . Agora is not a party to the state court liability suit, it is not a party to any pending state proceedings related to these events, and it could only bring the insurance issues before the state courts by affirmatively intervening in the pending liability action or commencing a separate, independent declaratory judgment action in state court. Moreover, a state court decision on the issues of Robinson Janitorial's vicarious liability and negligent supervision/hiring would have no direct bearing on the insurance company's duty to defend and the scope of policy coverage; a federal decision on the insurance issues would likewise have no impact on the state liability issues.

*Agora Syndicate*, 149 F.3d at 373. *See also Northland Ins. Co. v. Stewart Title Guar. Co.,* 327 F.3d 448, 453-454 (6th Cir. 2003) (holding that district did not abuse its discretion in hearing coverage action and noting that "[i]f Northland in fact had no duty to indemnify its insured or to defend them in the state action, then it should not be forced to participate in that action. Because Northland was not a party in the state court proceedings, it would not have been bound by the state court's determination").

Since this coverage action is not truly a parallel proceeding with the Backcharges and Defective HVAC Systems Actions, this Court should exercise its jurisdiction and entertain it.

**III.   No Efficiency Concerns Exist that Require A Stay of This Coverage Dispute.**

While it is true that "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration," *Wilton*, 515 U.S. at 288, no such efficiency concerns exist in this case.

As discussed above, this coverage action and the Backcharges and Defective HVAC System

12

Actions are not parallel proceedings; accordingly, *Wilton* and *Brillhart* do not apply.  Given that

they are not parallel proceedings, concerns of judicial economy are not implicated.

Since Wausau is not a party to the Backcharges and Defective HVAC System Actions and

since the issues of whether Wausau has a duty to defend or indemnify Iaccarino in those actions are

not before the state court, a decision by this Court on the coverage issues will not offend principles

of comity or result in duplicative or piecemeal litigation.  *See Northland Ins. Co.*, 327 F.3d at 454.


Furthermore, this Court can and should decide the coverage issues.  They are separate and

distinct from the breach of contract claims made by Granger in the Backcharges Action and the

breach of contract and negligence claims made by Granger in the Defective HVAC System Action.

Although the issues involved in this coverage action are issues of state contract law, this Court

decides such coverage issues all the time.  The fact that Wausau could have intervened in the state

court proceedings is irrelevant.  *See id.* (noting that "intervening in state court action would not

necessarily have provided a better or more effective alternative remedy").  Moreover, Wausau

should not be made to wait the resolution of the state court proceedings to have the coverage issues

decided.  *See id.* (noting that "if Northland in fact had no duty to indemnify its insured or to defend

them in the state action, then it should not be forced to participate in that action").

The narrow issues presented in this coverage action do not require the full ventilation the

Backcharges and Defective HVAC System Actions will require.  Iaccarino's contention that Wausau

is attempting to force Granger, Iaccarino and KMD to litigate the liability issues in the state court

actions in federal court is wholly without merit.  On the contrary, Wausau is simply seeking a

declaration that it has no duty to defend or indemnify Iaccarino in the Backcharges and Defective

HVAC Systems Actions, which it is plainly entitled to do.[12]  *See Lumbermens Mut. Cas. Co. v. Belleville Indus., Inc.*, 407 Mass. 675, 686 (1990) (noting that declaratory judgment proceeding provides procedure for definitively resolving a coverage dispute); *Sterilite Corp. v. Continental Cas. Co.*, 17 Mass. App. Ct. 316, 322 (1983) (noting that an insurer can "get clear of the duty [to defend] from and after the time it demonstrates with conclusive effect on the third party that as a matter of fact -- as distinguished from the appearances of the complaint and policy -- the third party cannot establish a claim within the insurance").

Here, Wausau seeks a declaration that it has no duty to defend Iaccarino in the Backcharges Action and the Defective HVAC System Action because there is no "property damage" within the meaning of the Wausau CGL Policy and because the "product" exclusion (exclusion k.) and the "your work" exclusion (exclusion l.) apply to bar coverage.

 The Supreme Judicial Court has recognized, along with a majority of courts, that the risk intended to be insured by a CGL policy is:

> [T]he possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property **other than to the product or completed work itself,** and for which the insured may be found liable.  The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity.  This may even extend to an obligation to completely replace or rebuild the deficient product or work.  This liability, however, is not what the coverages in question are designed to protect against.  **The coverage is for tort liability for physical damages to others and not contractual liability for the insured for economic loss because the product or**

---

[12]Furthermore, by filing this declaratory action, Wausau is not, as Iaccarino alleges, trying to relieve itself of the "financial burden"of Iaccarino's defense in the Defective HVAC System Action. Rather, Wausau is properly seeking a declaration that it owes no coverage to Iaccarino for either the Backcharges Action or the Defective HVAC Action.

> **completed work is not that for which the damaged person bargained.**

*Commerce Ins. Co. v. Betty Caplette Builders, Inc.*, 420 Mass. 87, 91 (1995), *quoting* Henderson,

Insurance Protection for Products Liability and Completed Operations -- What Every Lawyer Should

Know, 50 Neb. L. Rev. 415, 441 (1971) (emphasis added).

Wausau contends it that has no duty to defend or indemnify Iaccarino in either the Backcharges

Action or the Defective HVAC Systems Action.  The O'Brien Affidavit and Supplemental O'Brien

Affidavit from the Valley Forge Action support Wausau's position.  In those Affidavits, Granger's

President, Ernest O'Brien, indicates that the damage in the auditorium was only to Iaccarino's

product itself (i.e., the plastic laminate panels).  Exhibit 2, Supplemental O'Brien Affidavit at ¶ 2.

Furthermore, Mr. O'Brien states that Granger's alleged damages are almost exclusively the costs

to replace the plastic laminate panels.  Exhibit 1, O'Brien Affidavit at ¶¶ 9-10.  Damage simply to

an insured's product itself and the Costs to replace that product simply are not the type of risks that

are covered by CGL policies.  Likewise, claims for backcharges are not within the scope of a CGL

policy.

In this action, Wausau intends to conduct some narrow and focused discovery regarding

Granger's alleged damage in the underlying Worcester Superior Court actions and then move for

summary judgment.

Accordingly, no efficiency concerns exist here that militate toward staying this coverage

action.

### <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Iaccarino's Motion to Stay.

### <u>REQUEST FOR ORAL ARGUMENT</u>

15

Wausau believes that oral argument may assist this Court and wishes to be heard; accordingly, it requests a hearing on Iaccarino's Motion to Stay in accordance with Local Rule 7.1(D).

EMPLOYERS INSURANCE COMPANY OF
WAUSAU
By its attorneys,


/s/John F. Brosnan
James E. Harvey, Jr./BBO #224920
John F. Brosnan/BBO #556678
O'MALLEY and HARVEY, LLP
Two Oliver Street, 9th Floor
Boston, MA  02109-4908
Tel: 617-357-5544
Fax: 617-204-3477

16