COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.

01721

SUPERIOR COURT
CIVIL ACTION NO. 2003-1721

| VALLEY FORGE INSURANCE COMPANY, |
| Plaintiff, |
| v. |
| R.W. GRANGER & SONS, INC., |
| Defendant. |

RECEIVED & FILED
CLERK OF THE COURTS
NORFOLK COUNTY
2/25/04

### AFFIDAVIT OF ERNEST E. O'BRIEN

1. My name is Ernest E. O'Brien. I am president of R.W. Granger & Sons, Inc. ("Granger"), of Shrewsbury, Massachusetts. Granger is a construction company.

2. On May 16, 2000, Granger entered into a contract (the "Construction Contract") with the Town of Shrewsbury (the "Town") to construct the Shrewsbury High School (the "School"). Copies of pages of the Construction Contract are attached hereto as Exhibit 1. Granger subcontracted work on the heating, ventilation, and air condition system (the "HVAC System") to KMD Mechanical Corporation ("KMD"), which, in turn, subcontracted part of the work to Johnson Controls, Inc. Granger did not participate in the installation of the HVAC system or the controls of that system.

3. At all relevant times, Granger was insured by Valley Forge under a standard Commercial General Liability Coverage policy (Form No. CG 00 01 10 01) and Contractor's General Liability Extension Endorsement (G-18652-C) (collectively, the "Policy.") A copy of the Policy is attached as Exhibit 2.

4. On September 3, 2002, the Town's architect issued a Certificate of Substantial Completion for the School with certain items excepted, including the HVAC system. On or about that date, the Town put the School, including the HVAC system, to its intended use when it opened the School for the 2002-2003 academic year.

5. On December 3, 2002, a controller that adjusted the heating output for an air handler unit malfunctioned, causing the temperature in the School's auditorium to rise to 135 degrees F. The heat damaged the plastic laminate panels in the auditorium, causing some to delaminate and others to fall from the ceiling. The HVAC system malfunctioned during the night. Neither Granger nor any subcontractor or sub-subcontractor was performing operations on the HVAC system or any other part of the School when the HVAC system malfunctioned.

6. The controller malfunction was due solely to the negligence of KMD or its subcontractor, Johnson Controls. Neither the failure of the HVAC system nor the damage to the panels or any other part of the auditorium was expected or intended from the standpoint of Granger.

7. The plastic laminate panels were made and installed by Granger's subcontractor, Iaccarino & Son, Inc. ("Iaccarino"). Granger did not participate

in any manner in the fabrication of the panels or in the selection of adhesive for the panels.

8. In the spring of 2003, the Town, through its architect, directed Granger to proceed with a remedial plan to remove and replace the damaged panels and repair all other damage that occurred as a result of the controller malfunction.

9. Granger has engaged subcontractors to remedy this condition, at substantial cost. As summarized on Exhibit 3 to this affidavit, Granger has contracted with Millwork One for the construction and installation of new panels at a cost of $557,513. Granger has paid $490,095 of this amount to date. In addition, Granger has paid $800 for cleaning costs (to Sunshine Cleaning); $192 for equipment rental (to NES Rentals); and $942 for repair to the sprinkler system (to Fire Suppression Systems of New England). Granger has also incurred $8,756 of cost for its own work in repairing the property damage. Granger expects to pay an additional $800 for repair to the sprinkler system, to pay $2,063 for electrical work (to Coghlin Electrical), to pay $1,600 for repair and reinstallation of handrails that were attached to some of the panels (to Ralph's Blacksmith) and to incur $1,443 in cost for additional work by Granger in repairing the property damage. These amounts total $574,109.

10. Granger estimates its overhead cost at $57,411 (10% of the above amount), bringing the total claim to $631,520.

11. I have 26 years of experience in the construction industry and have been president of Granger for 4 years. I am familiar with the usual

amounts charged by subcontractors in Massachusetts for the type of work described in Paragraph 9. In my opinion, $557,513 is a fair and reasonable charge for the construction and replacement of new panels, and each of the other amounts set forth in Paragraph 9 is a fair and reasonable charge for the work to which those amounts relate. Furthermore, based on my experience in the construction industry and my experience as president of Granger, $57,411 represents a fair and reasonable estimate of Granger's overhead expense.

Signed under the penalties of perjury on November 21, 2003.

_____
Ernest E. O'Brien

# 1373508_v1



EXHIBIT 3

RW Granger & Sons, Inc.
Estimated Total Auditorium Claim

| Vendor | Commitment | Paid to Date | Estimated Cost to Complete | Total |
|---|---|---|---|---|
| Millwork One | 557,513 | 490,095 | 67,418 | 557,513 |
| Sunshine Cleaning | | 800 | | 800 |
| NES Rentals | | 192 | | 192 |
| RWG Labor | | 8,756 | 1,443 | 10,199 |
| Ralph's Blacksmith | | - | 1,600 | 1,600 |
| Fire Suppresions Systems of NE | | 942 | 800 | 1,742 |
| Coghlin Electrical | | | 2,063 | 2,063 |
| Total | 557,513 | 500,785 | 73,324 | 574,109 |
| Overhead | | | 10.0% | 57,411 |
| Total | | | | 631,520 |