Paragraph f. does not include that part of any contract or agreement:

**(1)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    **(a)** Preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; or

    **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

**(2)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in paragraph (1) above and supervisory inspection, or engineering activities.

**(3)** That indemnifies any person or organization for damage by fire, lightning, explosion, smoke, leakage from fire protective systems, or any combination thereof to premises rented or loaned to you.

## VII. Mobile Equipment Redefined

Paragraph 12.f.(1) of SECTION V - DEFINITIONS does not apply to self-propelled vehicles of less than 1000 pounds gross vehicle weight.

## VIII. Personal and Advertising Injury Redefined

Paragraph 14. of SECTION V - DEFINITIONS is amended to add the following:

**h.** Discrimination against a natural person on the basis of race, color, ethnic origin, gender or religion, but only if such discrimination is not:

**(1)** At the direction of or with the knowledge or consent of:

    **(a)** You;

    **(b)** Your spouse, if you are an individual;

    **(c)** Your members or your partners and their spouses, if you are a partnership or joint venture; or

    **(d)** Your "executive officers" and directors and your stockholders, if you are a corporation; or

**(2)** Directly or indirectly related to the employment, prospective employment, or termination of any person; or

**(3)** Directly or indirectly related to the sale, rental, lease or sub-lease or prospective sale, rental, lease or sub-lease of any room, dwelling or premises by or at the direction of any insured.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**Employment-Related Practices Exclusion**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph 2., Exclusions of SECTION I - COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY:

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph 2., Exclusions of SECTION I - COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY:

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

Copyright, Insurance Services Office, Inc., 1997

CG 21 47 07 98
07-98

Page 1
See next page

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Policy number  TBC-Z91-425443-022

This endorsement is effective    01-28-02     and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## Amendment of Liquor Liability Exclusion Endorsement
## (Exception for Scheduled Activities)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion c. of COVERAGE A (Section I) is replaced by the following:

c.   "Bodily injury" or "property damage" for which any insured may be held liable by reason of :

(1)  Causing or contributing to the intoxication of any person;

(2)  The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3)  Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you:

(1)  Manufacture, sell or distribute alcoholic beverages;

(2)  Serve or furnish alcoholic beverages for a charge whether or not such activity:

(a)  Requires a license;

(b)  Is for the purpose of financial gain or livelihood; or

(3)  Serve or furnish alcoholic beverages without a charge, if a license is required for such activity.

However, this exclusion does not apply to "bodily injury" or "property damage" arising out of the selling, serving or furnishing of alcoholic beverages at the specific activity(ies) described in the schedule of this endorsement.

### Schedule

Description of Activity(ies):
ALL COMPANY-SPONSORED ACTIVITIES WHICH YOU HOLD FOR YOUR EMPLOYEES, CLIENTS, AND/OR GUESTS, INCLUDING COMPANY PICNICS AND COMPANY CHRISTMAS/HOLIDAY PARTIES.

Copyright, Insurance Services Office, Inc., 1989

Issued: 03-28-02

Policy number TBC-Z91-425443-022

This endorsement is effective    01-28-02    and will terminate with the policy. It is issued by the company designated in the Declarations. All other provisions of the policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## Exclusion - Year 2000 Computer-Related and Other Electronic Problems

This endorsement modified insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability and Paragraph 2., Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:

**2.   Exclusions**

This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" (or "personal and advertising injury" if defined as such in your policy) arising directly or indirectly out of:

**a.**   Any actual or alleged failure, malfunction or inadequacy of:

   **(1)** Any of the following, whether belonging to any insured or to others:

      **(a)** Computer hardware, including microprocessors;

      **(b)** Computer application software;

      **(c)** Computer operating systems and related software;

      **(d)** Computer networks;

      **(e)** Microprocessors (computer chips) not part of any computer system; or

      **(f)** Any other computerized or electronic equipment or components; or

   **(2)** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph 2.a.(1) of this endorsement

   due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

**b.**   Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph 2.a. of this endorsement.

Copyright, Insurance Services Office, Inc., 1998

Issued: 03-28-02

Policy number TBC-Z91-425443-022

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## Amendment of Limits of Insurance For Designated Construction Projects Endorsement

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**The Each Designated Construction Project Aggregate Limit of Insurance is equal to 100% of the General Aggregate Limit of Insurance described in Paragraph 2 below. of this endorsement.**

A.  LIMITS OF INSURANCE (SECTION III) is deleted and replaced by the following:

SECTION III - LIMITS OF INSURANCE

1.  The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a.  Insureds;

    b.  Claims made or "suits" brought; or,

    c.  Persons or organizations making claims or bringing "suits."

2.  The General Aggregate Limit is the most we will pay for the sum of:

    a.  Damages under Coverage A, except for:

        (1)  damages because of "bodily injury" and "property damage" included in the "products/completed operations hazard," and

        (2)  damages because of "bodily injury" and "property damage" arising out of operations performed by you or on your behalf at construction projects designated in the Schedule.

    b.  Damages under Coverage B; and,

    c.  Medical expenses under Coverage C, except for medical expenses arising out of operations performed by you or on your behalf at construction projects designated in the Schedule;

3.  The Each Designated Construction Project Aggregate Limit of Insurance described applies separately to each construction project away from premises owned by or rented to you that is designated in the Schedule and is the most we will pay for:

    a.  Damages under Coverage A, because of "bodily injury" and "property damage" arising out of operations performed by you or on your behalf at that construction project; and

    b.  Medical expenses under Coverage C, arising out of operations performed by you or on your behalf at that construction project.

The Each Designated Construction Project Aggregate Limit of Insurance applicable to each designated construction project is the only Each Designated Construction Project Aggregate Limit of Insurance available for "bodily injury" and "property damage" under Coverage A and medical expenses under Coverage C, arising out of operations performed at that construction project.

Regardless of the number of separate operations performed by you or on your behalf at each construction project designated in the Schedule below, all operations performed by you or on your behalf at each such project will be considered as arising from that one project for purposes of application of the Each Designated Construction Project Aggregate Limit of Insurance.

The Each Designated Construction Project Aggregate Limit of Insurance does not include damages under Coverage A because of "bodily injury" and "property damage" included in the "products/completed operations hazard."

4. The Products/Completed Operations Aggregate limit is the most we will pay under Coverage A for damages because of injury and damage included in the "products/completed operations hazard."

5. Subject to paragraph 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

6. Subject to paragraphs 2. or 3. or 4. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

    a. Damages under Coverage A; and,

    b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence."

7. Subject to paragraph 6. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises while rented to you or temporarily occupied with permission of the owner arising out of any one fire.

8. Subject to paragraph 6. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**Schedule**

Designated Construction Project(s):
```
PFIZER CHILD CARE FACILITY 0 JOB NUMBER 20100S-01 (NEW LONDON CT)
SOLOMON SCHECHTER SCHOOL OF WESTCHESTER (WESTCHESTER NY)
LAFAYETTE ELEMENTARY SCHOOL (EVERETT, MA)
LEWIS ELEMENTARY SCHOOL (EVERETT MA)
UNIVERSITY OF MASSACHUSETTS MEDICAL SCHOOL (WORCESTER MA)
MASS. ART NEW RESIDENCE HALL (BOSTON MA)
FIDELITY INVESTMENT FIT OUT PROJECT (BOSTON MA)
JAMES HILLHOUSE HIGH SCHOOL (NEW HAVEN CT)
HOCKOMOCK YMCA - CONTRACT 307 (N ATTLEBORO MA)
ROCKEFELLER UNIVERSITY HOSPITAL (NEW YORK NY)
RYE COUNTRY DAY SCHOOL (RYE NY)
HORN POND WATER TREATMENT PLANT (WOBURN MA)
LALIBERTE & MERRILL SCHOOLS (RAYNHAM MA)
```

**Schedule (Continued)**

Designated Construction Project(s):
NORWELL HIGH SCHOOL (NORWELL MA)
ROBERT D. MARSHALL CARPENTERS TRAINING CENTER (MILLBURY MA)
343 CONGRESS ST BUILDING (BOSTON MA)
CHELSEA HIGH SCHOOL (CHELSEA MA)
SCITUATE HIGH SCHOOL (SCITUATE MA)
DRACUT JUNIOR HIGH SCHOOL (DRACUT MA)
REEVES ELEMENTARY SCHOOL (WOBURN MA)
SHREWSBURY HIGH SCHOOL (SHREWSBURY MA)
COHASSET MIDDLE/HIGH SCHOOL (COHASSET MA)
MASCONOMET REGIONAL HIGH SCHOOL (BOXFORD MA)
WESTBOROUGH HIGH SCHOOL (WESTBOROUGH MA)
BELMONT WARREN ELEMENTARY SCHOOL (BROCKTON MA)
RIPPOWAM SECONDARY SCHOOL (STAMFORD CT)
CON EDISON 16TH STREET SERVICE CENTER FACILITY (NEW YORK NY)

HOME OFFICE RECORDS COPY

# Wausau Insurance Companies

Endorsement number  001  for policy number  TBC-Z91-425443-022

Named Insured  IACCARINO & SON, INC.

This endorsement is effective    01-28-02    and will terminate with the policy.  It is issued by the company designated in the Declarations.  All other provisions of the policy remain unchanged.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## Change Endorsement

SEE ATTACHED "SCHEDULE OF REVISIONS" AMENDING THE SCHEDULE(S) ATTACHED TO YOUR POLICY.

THE FOLLOWING FORM(S) AND/OR ENDORSEMENT(S) ARE CANCELED WITH THE EFFECTIVE DATE OF THIS CHANGE:
ST9013        06/01    EIOW SPECIAL MEETING

THE FOLLOWING FORM(S) AND/OR ENDORSEMENT(S) ARE ADDED AND ARE EFFECTIVE WITH THE EFFECTIVE DATE OF THIS CHANGE:
GL2027        01/99    OWNERS/MANAGERS/LESSORS OF PREM

TOTAL ADDITIONAL/RETURN PREMIUM: $          50

Issued: 10-17-02

## Schedule of Revisions

This schedule includes revisions made to the "General Liability Schedule" and/or the "General Liability Schedule (Miscellaneous Charges)" attached to your policy. Codes are identified immediately after the code number as to whether the code is added, deleted or changed.

Policy number  TBC-Z91-425443-022            Schedule number  00001 of endorsement # 001

---

| Class Code | Premium Basis | Rates | Premium |
|---|---|---|---|
| OWNERS/MANAGERS/LESSORS OF PREM | | | |
| 72027  (ADD) | | FLAT CHARGE | 50 |

GL0081
09-92

Endorsement number  O O 1  for policy number  T B C – Z 9 1 – 4 2 5 4 4 3 – 0 2 2

This endorsement is effective     O 1 – 2 8 – O 2     and will terminate with the policy.  It is issued by the company designated in the Declarations.  All other provisions of the policy remain unchanged.

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## Owners, Managers or Lessors of Premises Additional Insured Endorsement

This endorsement modifies the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

WHO IS INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to your liability arising out of the maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

1.  Any "occurrence" which takes place after you cease to be a tenant in those premises.

2.  Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization designated in the Schedule.

3.  Any owner, manager or lessor of premises if you notify us in writing that you do not wish this insurance to apply to such owner, manager or lessor within 60 days after you become the premises lessee.

### Schedule

Description of Premises (Part Leased to You)
SOBON & ASSOCIATES

Name of Person or Organization (Additional Insured)
615 W JOHNSON AVE
STE 210
CHESHIRE CT

*10.0*

*Recd*
*2/23/04*

## COMMONWEALTH OF MASSACHUSETTS

NORFOLK, ss.                               SUPERIOR COURT
                                           CIVIL ACTION NO.  2003- *1721*
01721

```
VALLEY FORGE INSURANCE
COMPANY,

              Plaintiff,

v.

R.W. GRANGER & SONS, INC.,

              Defendant.
```

RECEIVED & FILED
**CLERK OF THE COURTS**
NORFOLK COUNTY
*2/25/04*

### <u>AFFIDAVIT OF ERNEST E. O'BRIEN</u>

1.      My name is Ernest E. O'Brien.  I am president of R.W. Granger &
Sons, Inc. ("Granger"), of Shrewsbury, Massachusetts.  Granger is a
construction company.

2.      On May 16, 2000, Granger entered into a contract (the
"Construction Contract") with the Town of Shrewsbury (the "Town") to
construct the Shrewsbury High School (the "School").  Copies of pages of the
Construction Contract are attached hereto as Exhibit 1.  Granger
subcontracted work on the heating, ventilation, and air condition system (the
"HVAC System") to KMD Mechanical Corporation ("KMD"), which, in turn,
subcontracted part of the work to Johnson Controls, Inc.  Granger did not
participate in the installation of the HVAC system or the controls of that
system.

3.      At all relevant times, Granger was insured by Valley Forge under a standard Commercial General Liability Coverage policy (Form No. CG 00 01 10 01) and Contractor's General Liability Extension Endorsement (G-18652-C) (collectively, the "Policy.")  A copy of the Policy is attached as Exhibit 2.

4.      On September 3, 2002, the Town's architect issued a Certificate of Substantial Completion for the School with certain items excepted, including the HVAC system.  On or about that date, the Town put the School, including the HVAC system, to its intended use when it opened the School for the 2002-2003 academic year.

5.      On December 3, 2002, a controller that adjusted the heating output for an air handler unit malfunctioned, causing the temperature in the School's auditorium to rise to 135 degrees F.   The heat damaged the plastic laminate panels in the auditorium, causing some to delaminate and others to fall from the ceiling.  The HVAC system malfunctioned during the night. Neither Granger nor any subcontractor or sub-subcontractor was performing operations on the HVAC system or any other part of the School when the HVAC system malfunctioned.

6.      The controller malfunction was due solely to the negligence of KMD or its subcontractor, Johnson Controls.   Neither the failure of the HVAC system nor the damage to the panels or any other part of the auditorium was expected or intended from the standpoint of Granger.

7.      The plastic laminate panels were made and installed by Granger's subcontractor, Iaccarino & Son, Inc. ("Iaccarino").  Granger did not participate

in any manner in the fabrication of the panels or in the selection of adhesive for the panels.

8.    In the spring of 2003, the Town, through its architect, directed Granger to proceed with a remedial plan to remove and replace the damaged panels and repair all other damage that occurred as a result of the controller malfunction.

9.    Granger has engaged subcontractors to remedy this condition, at substantial cost. As summarized on Exhibit 3 to this affidavit, Granger has contracted with Millwork One for the construction and installation of new panels at a cost of $557,513. Granger has paid $490,095 of this amount to date. In addition, Granger has paid $800 for cleaning costs (to Sunshine Cleaning); $192 for equipment rental (to NES Rentals); and $942 for repair to the sprinkler system (to Fire Suppression Systems of New England). Granger has also incurred $8,756 of cost for its own work in repairing the property damage. Granger expects to pay an additional $800 for repair to the sprinkler system, to pay $2,063 for electrical work (to Coghlin Electrical), to pay $1,600 for repair and reinstallation of handrails that were attached to some of the panels (to Ralph's Blacksmith) and to incur $1,443 in cost for additional work by Granger in repairing the property damage. These amounts total $574,109.

10.    Granger estimates its overhead cost at $57,411 (10% of the above amount), bringing the total claim to $631,520.

11.    I have 26 years of experience in the construction industry and have been president of Granger for 4 years. I am familiar with the usual

amounts charged by subcontractors in Massachusetts for the type of work described in Paragraph 9.  In my opinion, $557,513 is a fair and reasonable charge for the construction and replacement of new panels, and each of the other amounts set forth in Paragraph 9 is a fair and reasonable charge for the work to which those amounts relate.  Furthermore, based on my experience in the construction industry and my experience as president of Granger, $57,411 represents a fair and reasonable estimate of Granger's overhead expense.

Signed under the penalties of perjury on November 2⁄, 2003.

_____
Ernest E. O'Brien

# 1373508_v1