UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EMPLOYERS INSURANCE COMPANY OF WAUSAU, ) ) ) ) Plaintiff, ) ) v. ) ) IACCARINO & SON, INC., R.W. ) GRANGER & SONS, INC., and KMD ) MECHANICAL CORPORATION, ) ) Defendants. ) ) ) | Civil Action No. 04-40127-FDS |

## MEMORANDUM AND ORDER

**SAYLOR, J.**

This is a declaratory judgment action concerning insurance coverage. Plaintiff Employers Insurance Company of Wausau ("Wausau") seeks a declaration that it has no duty to defend or indemnify its insured, Iaccarino & Son, Inc., in two lawsuits pending in Worcester Superior Court. In those lawsuits, R.W. Granger & Sons, Inc., has brought breach of contract and negligence claims against Iaccarino and KMD Mechanical Corporation in connection with subcontracting work they performed for Granger on a construction project in Shrewsbury, Massachusetts.[1]

---

[1] Wausau does not insure Granger or KMD, and does not appear to be otherwise affiliated with those entities. Presumably, Wausau made Granger a party to the present declaratory judgment action because it is necessary "to have the underlying claimant bound by any judicial determination concerning the insurer's duty to defend." *See Lumbermens Mutual Casualty v. Belleville Industries*, 407 Mass. 675, 686 (1990). It is unclear why Wausau named KMD as a party defendant.

Pending before the Court are Iaccarino's motion to stay Wausau's declaratory judgment action until Granger's claims against Iaccarino in state court have been adjudicated on the merits, and Wausau's motion for leave to amend its complaint pursuant to Fed. R. Civ. P. 15(a) to add a count for reimbursement of defense costs. For the reasons set forth below, the motion to stay will be denied, and the motion for leave to amend will be granted.

## I.   Background

### A.   The Underlying Litigation

On May 16, 2000, Granger entered into a contract with the Town of Shrewsbury, Massachusetts to construct a high school. Granger subcontracted heating, ventilation, and air conditioning work for the project to KMD, and subcontracted millwork for the project to Iaccarino. Among other things, Iaccarino constructed plastic laminate panels (called "clouds") installed in the ceiling of the school auditorium pursuant to its subcontract with Granger.

Granger alleges that, on December 3, 2002, a controller that adjusted the heating output for an air handler unit malfunctioned, causing the temperature in the school's auditorium to rise to 135 degrees Fahrenheit. The heat damaged the plastic laminate panels in the auditorium, causing some to delaminate, and causing some of the plastic laminate to fall off the panels. The Town of Shrewsbury assessed charges against Granger for project delays resulting from the heating malfunction and damage to the auditorium.

On May 23, 2003, Granger filed suit in Worcester Superior Court against the Town of Shrewsbury, Iaccarino, KMD, and a number of other defendants, claiming both that the charges assessed by the Town were erroneous, and, in the alternative, that Iaccarino and other defendants had breached their subcontracts and were therefore liable for the project delays (the "first

action").[2]

On August 20, 2003, Granger filed a separate lawsuit against Iaccarino and KMD in Worcester Superior Court (the "second action"). The second action asserts claims for breach of contract and negligence in connection with the heating malfunction and resulting damage to the ceiling of the auditorium. Specifically, the complaint alleges that Iaccarino provided and installed insufficient glue on the panels to withstand the conditions in the auditorium.

### B.    Iaccarino's Insurance Contract with Wausau

Wausau and Iaccarino are parties to a Commercial General Liability Policy (the "CGL policy") that obligates Wausau to provide Iaccarino with certain insurance coverage for the relevant policy period. The CGL policy provides for both indemnity and defense costs for, among other things, "property damage" claims, as defined. Among the exclusions to coverage are property damage to "your product," as defined, and "your work," as defined. Wausau contends that the property damage at issue falls outside the scope of the coverage under the CGL policy.

### C.    Insurance Coverage Proceedings

On about October 30, 2003, Wausau advised Iaccarino that it would defend it in the second action in Worcester Superior Court under a reservation of rights; it is presently providing Iaccarino with a defense in that action.[3] Wausau denied coverage to Iaccarino for the first action

---

[2] The lawsuit is entitled *R.W. Granger & Sons, Inc. v. Town of Shrewsbury, Iaccarino & Sons, Inc., Baron Industries, Inc., Bass Associates, Island International Industries, Inc., KMD Mechanical Corporation, Coughlin Electric Contractors, Inc., Bononmo Tile Co., Inc., Prudential Door & Window Co., Inc., Dave Gardener Contracting & Supply, Emanouil Brothers, Inc. and KDK Enterprises, Inc.*, Civil Action No. 03-01021-A.

[3] Wausau's reservation of rights letter notified Iaccarino that Wausau would withdraw from the defense if its investigation revealed that no "property damage" occurred within the meaning of the CGL policy, or that an exclusion applied to bar coverage.

on March 22, 2004.[4]

Wausau filed the present declaratory judgment action on July 6, 2004, seeking a declaration that it has no obligation to defend or indemnify Iaccarino in either the first or the second action under the terms of the CGL policy. Jurisdiction in this Court is based on diversity of citizenship.

On December 10, 2004, Iaccarino filed a motion to stay Wausau's declaratory judgment action, pending the resolution of Granger's claims against Iaccarino in Superior Court. On the same day, Iaccarino filed a motion for leave to file a third-party complaint against Wausau in Superior Court. The proposed third-party complaint seeks a declaratory judgment that Wausau has a duty to defend Iaccarino in the first and the second action under the terms of the CGL policy. As far as the Court is aware, Iaccarino's motion for leave to file a third-party complaint is still pending in Superior Court.

On January 10, 2005, Wausau filed a motion in this Court to amend its complaint to add a count for reimbursement of defense costs allocable to claims for which no potential insurance coverage exists under the CGL policy. Iaccarino opposes that motion on grounds of futility.

## II. Discussion

Currently pending before the Court are (1) Iaccarino's motion to stay this declaratory judgment action until Granger's claims against it in Superior Court have been adjudicated on the

---

Under Massachusetts law, it is proper for an insurance company to agree to defend its insured subject to a reservation of rights. *Herbert A. Sullivan, Inc. v. Utica Mutual Ins. Co.*, 439 Mass. 387, 406 (2003) (an insurer's defense of its insured pursuant to a reservation of rights puts the insured on notice of a possible disclaimer by the insurance company and allows it to take appropriate steps to protect its rights).

[4] The Superior Court consolidated the first and second actions on March 29, 2004. Thus, this Memorandum will hereinafter refer to the proceedings in state court as a single lawsuit, unless the context requires otherwise.

merits, and (2) Wausau's motion to amend its complaint to add a count for reimbursement of costs allocated to claims against Iaccarino that are not potentially covered by the CGL policy. The Court will consider each motion in turn.

### A.     The Motion to Stay

The Declaratory Judgment Act, 28 U.S.C. § 2201, is designed to enable parties "to clarify legal rights and obligations before acting upon them." *Ernst & Young v. Depositors Econ. Protection Corp.*, 45 F.3d 530, 534 (1st Cir. 1995).  By its terms, the Act confers discretion upon the court rather than an absolute right upon litigants.  *Green v. Mansour*, 474 U.S. 64, 72 (1985); *El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488, 493 (1st Cir. 1992) (the Declaratory Judgment Act "neither imposes an unflagging duty upon courts to decide declaratory judgment actions nor grants an entitlement to litigants to demand declaratory remedies").  Thus, despite the normal principle that federal courts should adjudicate claims within their jurisdiction, the district court possesses broad discretion in determining whether and when to entertain a declaratory judgment action.  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282, 289-90 (1995) (holding that the district court's decision about the propriety of hearing declaratory judgment actions should be reviewed for abuse of discretion).  The court's decision should be based on the totality of the circumstances, and guided by "considerations of practicality and wise judicial administration."  *Id.* at 288; *El Dia*, 963 F.2d at 494; *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 243 (1952) ("the propriety of declaratory relief in a particular case will depend upon the circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of judicial power").

Generally speaking, "[a]n insurance company's claim that it has no duty to defend in

5

another action is the archetypal case for which a declaratory judgment is appropriate." *Mt. Airy Insurance Co. v. Greenbaum*, 127 F.3d 15, 17 n.1 (1st Cir. 1997). However, there is an exception to this principle where a "parallel proceeding[]" – that is, an action "presenting the same [insurance coverage] issues, not governed by federal law, between the same parties" – is underway in state court. *Wilton*, 515 U.S. at 290; *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495 (1942). In that situation, the Supreme Court has advised that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit." *Brillhart*, 316 U.S. at 495. The Court has also admonished district courts to avoid "gratuitous interference with the orderly and comprehensive disposition of a state court litigation" and to refrain from exercising declaratory judgment jurisdiction where questions in controversy between the parties to the federal suit "can be better settled in proceedings pending in the state court." *Id. see also Chedester v. Town of Whately*, 279 F. Supp. 2d 53, 58 (D. Mass. 2003) (staying declaratory judgment action in part "to avoid 'piecemeal litigation,' that is, 'the implications and practical effects of litigating suits deriving from the same transaction in two separate fora,'" and to promote judicial economy and comity with state courts) (quoting *KPS & Associates, Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 10-11 (1st Cir. 2003).[5]

The action at bar presents "the archetypal case for which a declaratory judgment is appropriate": it involves an insurance company's claim that it has no duty to defend its insured in an action pending in state court. *Mt. Airy*, 127 F.3d at 17 n.1. The action in Superior Court is

---

[5] If the federal court, in the exercise of its discretion, determines that a declaratory judgment will serve no useful purpose, or that questions in controversy can be better resolved in state court, it may stay the federal action or dismiss it outright. *Wilson*, 515 U.S. at 288. A stay is often the preferable course of action because it ensures that the federal action can proceed without risk of a time bar if, for any reason, the matter in controversy is not resolved in state court. *Id.* at 288 n.2.

not a "parallel proceeding," as defined by the Supreme Court; to the Court's knowledge, Wausau is not a party, and the scope of Iaccarino's insurance coverage is not an issue, in that action. *See Agora Syndicate, Inc. v. Robinson Janitorial Specialists, Inc.*, 149 F.3d 371, 373 (5th Cir. 1998) ("no identity of parties or issues in the state and federal court suits"; "this is not what the Supreme Court meant . . . by use of the term "parallel state proceedings"); *Peerless Ins. Co v. Disla*, 999 F. Supp. 261, 262-263 (D. Conn. 1998) (declining to exercise discretion to stay or dismiss proceedings where the "insurer [was] not a party to the state court proceedings" and "[t]he state suit involve[d] the liability of multiple parties for the personal injuries"); *Northland Ins. Co. v. Stewart Title Guaranty Co.*, 327 F.3d 448, 454 (6th Cir. 2003) (ratifying lower court's decision to entertain declaratory judgment action where insurer "was not a party to the state court action, and neither the scope of insurance coverage nor the obligation to defend was before the state court").[6]

In an effort to avoid this conclusion, Iaccarino argues that, "[a]lthough Wausau has not yet been joined in the Massachusetts consolidated actions, a Motion for Leave to File Third-party

---

[6] The cases cited by Iaccarino are inapposite, as they all involved federal and state actions with identical parties, and similar, if not identical, legal issues. *See Wilton*, 515 U.S. at 279-280 (federal court entered a stay of declaratory judgment action where pending state lawsuit between the parties "encompassed the same coverage issues raised in the declaratory judgment action"); *Brillhart*, 316 U.S. at 492-493 (federal court dismissed the declaratory judgment action where insurer had been made a party to garnishment proceeding in state court and insurance coverage issues could be decided in that proceeding); *El Dia*, 963 F.2d at 491-492, 494 (reversing district court's issuance of a declaratory judgment where newspaper publisher filed a federal declaratory judgment action against the Governor of Puerto Rico, challenging an executive order, and filed a substantially similar action against the Governor in Superior Court three days later; the principal difference between the two lawsuits was that the federal action sought relief under the United States Constitution whereas the Superior Court action sought relief under local law); *Chedester*, 279 F. Supp. 2d at 54 (granting motion to stay where plaintiff simultaneously filed declaratory judgment actions in state and federal court against defendants; "[t]he state and federal lawsuits [were] virtually identical"); *Atlas Copco Construction Tools v. Allied Construction Products LLC*, 307 F. Supp. 2d 228, 231, 233 (D. Mass. 2003) (granting motion to stay where plaintiff filed a federal declaratory judgment action against defendant regarding interpretation of a confidentiality agreement, and, less than two hours later, defendant filed suit against plaintiff in state court alleging that it had violated the confidentiality agreement).

Complaint has been served and there is no reason to believe that the motion will not be granted by the Worcester Superior Court." Defendant's Memorandum at 7 n.3. However, it provides no support for this assertion, and the Court will not decline to hear a claim otherwise perfectly suited to declaratory judgment resolution based solely on conjecture.

Even if there was some indication that the Superior Court had, or was likely to, allow Iaccarino's motion, it is doubtful that questions of Wausau's duty to defend and indemnify "can be *better* settled in proceedings pending in the state court." *See Brillhart*, 316 U.S. at 495 (emphasis added). Interpretation of the insurance policy is governed by Massachusetts law, and there is obviously no question as to the Superior Court's competence in that arena. Nonetheless, federal courts sitting in diversity are also "fully capable of determining the nature of . . . coverage provided by" insurance contracts, and routinely do so without creating friction with state courts or offending principles of comity. *See Northland*, 327 F.3d at 454; *Agora Syndicate,* 149 F.3d at 373 (rejecting district court's reasoning that "comity counsels against exercising federal jurisdiction" and noting that federal courts had previously decided similar if not identical state insurance law issues).

Moreover, it is unlikely that the Superior Court would serve as a more practical or efficient venue in these circumstances. The state court litigation is already relatively complex: it involves twelve parties and multiple issues, including the propriety of the charges assessed against Granger by the Town, breach of contract claims that will entail interpretation of numerous subcontracts, and negligence claims stemming from damage to the auditorium caused by a malfunction in the heating system. The proceedings are also quite advanced; Granger's claims have been pending for approximately two years, and discovery is well underway, with written

8

discovery substantially completed as of December 2004. Considerations of judicial economy thus do not suggest that the insurance claims should be heard in state court, and indeed suggest the opposite. *See Disla*, 999 F. Supp. at 263 ("The state suit involves the liability of multiple parties for . . . personal injuries . . . it does not involve the insurance coverage issue presented in the declaratory judgment action. This is not a situation where the insurance coverage issue would be better decided in that proceeding"); *Northland*, 327 F.3d at 454 ("intervening in the state court action," as opposed to filing a declaratory judgment action in federal court, "would not necessarily have provided a better or more effective alternative remedy").

That conclusion is bolstered by the fact that proceedings in this Court are no longer in their infancy. The case has been pending since July 6, 2004, and the parties have already briefed the Court on relevant background information and various legal issues. The Court convened a scheduling conference on November 22, 2004, and issued a scheduling order to the parties the following day. On March 22, 2005, Iaccarino served discovery, including interrogatories, requests for admissions, and requests for document production on Wausau, to which responses presumably have been given. Requiring the parties to start the litigation process anew in state court would result in a needless a waste of time and resources. *See Agora Syndicate*, 149 F.3d at 373 (observing that the case was pending in federal court for more than a year, and the parties had briefed the merits; by dismissing the case, the district court "forced [the insurance company] into the wasteful prospect of commencing the declaratory judgment process anew in state court").

Iaccarino also contends that, by instituting this declaratory judgment action, Wausau is attempting to avoid "the financial burden of the defense it has already obligated itself to provide to Iaccarino." Defendant's Memorandum at 7. That argument, of course, begs the very question

9

at issue: whether Wausau is in fact obligated under the CGL policy to provide Iaccarino with a defense to Granger's claims against it in state court. The Court takes no position on that question at present, but notes that it is entirely appropriate for Wausau to attempt to define its obligation in advance of the state court judgment via a declaratory judgment action. *See Mt. Airy*, 127 F.3d at 17 n.1; *Northland*, 327 F.3d at 453-454 (exercising discretion to hear a declaratory judgment action on insurance coverage and noting that "if [the insurance company] had no duty . . . defend [the insured] in the state action, then it should not be forced to participate in that action"); *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000) ("prompt declaration of policy coverage would surely serve a useful purpose in clarifying the legal relations at issue"); *Aetna Casualty and Surety Co. v. Merritt*, 924 F.2d 1196, 1199 (9th Cir. 1992) ("We know of no authority for the proposition that an insurer is barred from invoking diversity jurisdiction to bring a declaratory judgment action against an insured on an issue of coverage").

Accordingly, Iaccarino's motion to stay Wausau's declaratory judgment action pending the outcome of proceedings in Worcester Superior Court will be denied. The Court will next consider Wausau's motion to amend its complaint.

### B.     The Motion to Amend

Wausau's original complaint sought a declaratory judgment that it has neither a duty to defend nor to indemnify Iaccarino in connection with the proceedings in Superior Court. Wausau now moves to amend its pleading to add a count for "reimbursement of defense costs that are allocable to claims for which no potential of coverage exists" under the CGL policy. Motion to Amend at 1. Iaccarino opposes that motion on grounds of futility.

The insurance company's duty to defend is separate from, and broader than, its duty to

indemnify. *Boston Symphony Orchestra v. Commercial Union Ins. Co.*, 406 Mass. 7, 10 (1989). An insurer has a duty to defend if the allegations of a complaint against its insured are reasonably susceptible of an interpretation that they state a claim that is covered by the terms of the insurance policy. *Simplex Technologies Inc. v. Liberty Mutual Ins. Co.*, 429 Mass. 196, 197-198 (1999); *Mt. Airy*, 127 F.3d at 18-19; *Sterilite Corp. v. Continental Casualty Co.*, 17 Mass. App. Ct. 316 (1983). Whereas the duty to defend is based on allegations in the complaint, the duty to indemnify is determined by the facts proven at trial. *See Boston Symphony*, 406 Mass. at 10-11.[7]

In Massachusetts, as elsewhere, the insurer must defend the entire lawsuit if it has a duty to defend any of the underlying counts in the complaint. *Mt. Airy*, 127 F.3d at 19 (citing *Aetna Casualty & Surety Co. v. Continental Casualty Co.*, 417 Mass. 730 n.1 (1990)); *Simplex Technologies, Inc. v. Liberty Mutual Insurance Co.*, 429 Mass. 196, 199 (1999). The Supreme Judicial Court has also held that, where the insurer defaults on its duty to defend, it bears the burden of allocating a *judgment* for the third-party plaintiff between covered claims and any non-covered claim brought in the same lawsuit. *Liquor Liability Joint Underwriting Ass'n of Massachusetts v. Hermitage Ins. Co.*, 419 Mass. 316, 323-324 (1995); *see also Palermo v. Fireman's Fund Ins. Co.*, 42 Mass. App. Ct. 283, 290 (1997).

Massachusetts courts have not, however, definitively determined whether an insurer may attempt to allocate *defense costs* between covered and non-covered claims, either where the insurer has defaulted on its duty to defend or where it has undertaken its duty and thereafter seeks reimbursement for expenses it incurred in defending non-covered claims. In *Liberty Mutual Ins.*

---

[7] If the insurer has no duty to defend, based on the allegations of the complaint, it necessarily follows that the insurer does not have a duty to indemnify. *Bagley v. Monticello Ins. Co.*, 430 Mass. 454, 459 (1999).

*Co. v. Metropolitan Life Ins. Co.*, 260 F.3d 54, 63 (1st Cir. 2001), the insured argued on appeal that the district court erred in imposing the burden of defense cost allocation on it, rather than the insurer. Relying on state court decisions in *Liquor Liability* and *Palermo*, the First Circuit stated that, under Massachusetts law, an insurer that improperly fails to defend a lawsuit "is liable for all defense costs and (assuming policy coverage) the entire resulting judgment or settlement, unless liability can be allocated among covered and uncovered claims." The court further explained that

> Massachusetts courts have not expressly decided which party bears the burden of allocating defense costs, but when allocation of defense costs is possible, the burden of allocation generally falls on the insurer. This is certainly the rule as to allocation of indemnity costs, *Liquor Liab. Joint Underwriting Ass'n*, 644 N.E.2d at 99; *Palermo*, 676 N.E.2d at 1163, and this approach likely applies to defense costs, since the insurer should have been in a position to properly allocate both types of costs had it defended the lawsuit.

*Id.*[8]

In *Dash v. Chicago Ins. Co.*, 2004 WL 1932760 (D. Mass. 2004), the court confronted a claim for allocation of defense costs under Massachusetts law in a case involving an insurer that had abrogated its duty to defend its insured. The court in *Dash* opined that the above-quoted passages of *Liberty Mutual* were dicta, which provide "at best, equivocal support" for the premise that defense costs are allocable under Massachusetts law. *Id.* at *8 n.16. In its view, the Massachusetts rule that "an insurer has a duty to defend an entire suit in which any claim is even potentially covered" militates against allowing the allocation of defense costs between covered and non-covered claims. *Id.* at *8, 10. The court acknowledged that the majority of courts allow an insurer, which has undertaken defense of the entire underlying action, to seek reimbursement

---

[8] The *Mutual Life* court also indicated that it was possible that "an insured who needlessly conflates expenses not covered by the policy with expenses that arguably are covered would forfeit any claim that the insurer should bear the burden of disaggregating the asserted damage figures." *Id.* at 63-64.

for expenses incurred in defending non-covered claims. *Id.* at *10 n.22; *see Buss v. Superior Court*, 16 Cal. 4th 35, 51-53 (Cal. 1997) (articulating majority rule).[9] However, it deemed the case before it "critically distinguishable from the line of cases permitting defense allocation," because the insurer had "wholly defaulted on its duty to defend and [sought] retroactively to apportion out the costs of non-covered claims in reimbursing [the insured] his defense costs." *Dash*, 2004 WL at *9. "Under these circumstances," which did "not present the more straight-forward claim of an insurer seeking reimbursement for costs incurred in defending non-covered claims," the court held that the insurer was "not entitled to apportion defense costs as between claims covered and not covered under the [insurance] Policy." *Id.* at *10.

Here, Wausau refused to provide Iaccarino with a defense in the first action in Superior Court, but has undertaken to defend it in the second action, subject to a reservation of rights. The proposed count for allocation of defense costs seeks "*reimbursement* for defense costs Wausau has *paid* that are not allocable to claims for which potential coverage exists." *See* Motion to Amend, ¶ 5 (emphasis added). Thus, Wausau appears to request reimbursement of defense costs associated with non-covered claims in the second action, rather than retroactive apportionment of costs in the first action in the event that it is found to have breached its duty to defend in that action.

Under the First Circuit's interpretation of Massachusetts law in *Liberty Mutual*, an insurer would be entitled to seek allocation of defense costs regardless of whether it had fulfilled its duty to defend. Although the *Dash* court rejected that interpretation, it nonetheless expressly limited

---

[9] The Court also noted that several courts have allowed defense cost allocation even where the insurer defaulted on its duty to defend. 2004 WL at *9 n.18 (citing *Insurance Co. of North America v. Forty-Eight Insulations*, 633 F.2d 1212 (6th Cir. 1980)).

its holding to the facts of the case before it, and suggested that a claim for allocation might be appropriate in circumstances where the insurer has not defaulted on its duty to defend. Therefore, the Court finds that it would not be necessarily futile to permit Wausau to amend its complaint to add a count for reimbursement of defense costs allocable to claims in the second action for which no potential insurance coverage exists. This claim falls squarely within the majority rule allowing allocation of defense costs, and presents the "more straight-forward" situation described by the *Dash* court.[10]

It is also possible that the outcome of Wausau's declaratory judgment claim will obviate the need to decide whether allocation of defense costs is permitted under Massachusetts law. *See Liberty Mutual*, 260 F.3d at 64 (allocation issue rendered irrelevant because none of the claims against the insurer were arguably covered by the insurance policy). A finding that none of the claims in the second action are reasonably susceptible of coverage under the CGL policy, and that Wausau therefore had no duty to defend in that action, would make it unnecessary to distinguish between covered and non-covered expenditures for purposes of Wausau's proposed claim for reimbursement. *See id.* Thus, assuming *arguendo* that Massachusetts case law prohibits allocation of defense costs under all circumstances, it would nonetheless be appropriate to allow

---

[10] Iaccarino contends that a claim for allocation of defense costs "flies in the face of long-settled Massachusetts law." Defendant's Memorandum at 3. However, the cases it cites in support of that position stand for the entirely separate proposition that the insurer must defend the entire lawsuit if it has a duty to defend any of the underlying counts in the complaint. *See Vappi & Co. v. Aetna Casualty and Surety Co.*, 348 Mass. 427, 420 n.3 (1965) (". . . until [the insured], during its defense of [the insured], narrowed the claims to those seeking a recovery that the policy did not cover, [the insured] was not relieved from its obligation to defend"); *Simplex Technologies*, 429 Mass. at 199 ("[I]t is well settled in this jurisdiction that a liability insurer owes a broad duty to defend against all claims that create a *potential* for indemnity") (emphasis in original). Most of the courts that subscribe to the majority rule permitting the insurer to allocate covered and non-covered defense costs also require it to defend the entire action in the first instance if there is at least one covered claim. *See, e.g., Buss*, 16 Cal. 4th at 47-48 (describing the initial duty to defend the entire claim as "prophylactic" rather than "contractual"). Thus, the cases cited by Iaccarino are not necessarily inconsistent with a rule that would permit the insurer to allocate defense costs, particularly where it has fulfilled its defense obligations in the first instance.

Wausau to amend its complaint based on the possibility that none of the claims against Iaccarino trigger its duty to defend.

Accordingly, Wausau's motion to amend its complaint to add a count for reimbursement of defense costs allocated to claims for which there is no potential coverage under the CGL policy will be granted.

## **Order**

For the reasons stated in the foregoing memorandum, Iaccarino's motion to stay is DENIED and Wausau's motion for leave to amend its complaint is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: June 3, 2005